John A. Garbarino, J.
Plaintiff entered into a contract with defendant Vincent E. Iorio, Inc., as general contractor, for the *969 construction of a building. In accordance with a provision of the contract, plaintiff obtained a policy of fire insurance with extended coverage on the building under construction. During the course of construction, the building was heavily damaged by fire. After extensive negotiations with the general contractor, the loss was adjusted by the plaintiff’s insurer and the agreed amount paid to plaintiff. In this action, said insurer sues in subrogation, in the name of the plaintiff, seeking to recover the amount of the loss from the general contractor and subcontractors. As subrogee, the insurer has, of course, no greater rights than his subrogor.
In one of its motions for summary judgment, defendant general contractor, joined by defendants J & L Concrete Construction Corp. and Carbide Reduction, Inc. (sued as Evans Air Products, Inc.), moves for the dismissal of the plaintiff’s complaint on the ground that the contract specified that each party would waive all rights against any other party for damages caused by any peril covered by insurance. Plaintiff opposes the motion, contending that section 5-323 of the General Obligations Law renders the contract provision void and unenforceable as contrary to public policy.
The contract provision .relied upon by the moving parties was part of the contract prepared by the plaintiff’s architect and is substantially the same as the clause in the standard form of American Institute of Architects agreement. It reads as follows: “ The Owner, Contractor, and all subcontractors and sub-subcontractors shall waive all rights, each against the others, for damages (whether or not due to the negligence of said parties) caused by fire or other perils covered by insurance provided for under the terms of this Section, except such rights as they may have to the proceeds of insurance held by the Owner as Trustee.”
Since the plaintiff, by its execution of the contract, 1 ‘ waived all rights * * * against the others, for damages * * * caused by fire * * * covered by insurance ”, the provision
effectively defeats the action unless the provision is rendered unenforceable by reason of the General Obligations Law. It is well settled that public service corporations and quasi public businesses cannot contract to absolve themselves from liability for their own negligence (Straus & Co. v. Canadian Pacific Ry. Co., 254 N. Y. 407; Krivitsky & Cohen v. Western Union Tel. Co., 129 Misc. 431) nor may a party so contract with respect to duties of public service (Emery v. Rochester Tel. Corp., 156 Misc. 562). However, neither a public service corporation, nor a quasi public *970 business, nor any duties of public service is here involved, and the provision waiving liability is clear and unequivocal
Section 5-323 of the General Obligations Law seems on its face to render void and unenforceable contract provisions such as the one above quoted. The text of the section reads as follows: “ Every covenant, agreement or understanding in or in connection with or collateral to any contract or agreement affecting real property made or entered into, whereby or whereunder a contractor -exempts himself from liability for injuries to person or property caused by or resulting from the negligence of such contractor, his agent, servants or employees, as the result of work performed or services rendered in connection with the construction, maintenance and repair of real property or its appurtenances, shall be. deemed to be void as against public policy and wholly unenforceable.” The intent of the Legislature, however, is the primary object sought in the interpretation of statutes (Rankin v. Shanker, 23 N Y 2d 111), “ In construing statutory provisions, the spirit and purpose of the statute and the objectives sought to be accomplished by the legislature must be borne in mind ” (Matter of New York Post Corp. v. Leibowwitz, 2 N Y 2d 677, 685). “ [T]o avoid an unintended result a statute should be given a rational interpretation, consistent with achieving its purpose and with justice and common sense ” (Matter of Drake v. Comptroller of City of New York, 278 App. Div. 317, 322).
The intention of the Legislature and the purpose of the statute, as indicated by its legislative history, was to encourage proper maintenance by elevator maintenance contractors and refrigerator service contractors by denying those experts the right to include in their service contracts a provision relieving them of liability for negligent service. The very preamble to the statute states that it is to declare ‘1 void and unenforceable agreements exempting building service or maintenance contractors from liability for negligence in connection with the installation or servicing of appliances or equipment used in the operation or mamtencmce of real property.” (L. 1953, ch. 716.) (Emphasis added.)
In construing this or any statute, the court must consider what public good is intended to be promoted and what public evil avoided. Obviously, the proper service and maintenance of refrigeration equipment and elevators is very much in the public interest. Likewise, related provisions of the General Obligations Law prohibiting landlords (§ 5-321) caterers (§ 5-322) and garages and parking, lots (§ 5-325) from avoiding liability *971 for their negligence are indicative of the Legislature’s concern with the interests of broad segments of the public. In the case before the court, the public is not involved. Members of the public normally cannot be expected to be found in a building under construction. Nor is the public in any way affected when, as here, the owner of the building, the general contractor and the subcontractors each agree to waive liability on the part of the other for claims covered by insurance. The court cannot conclude that the Legislature intended to prohibit a>s against public policy the waiver provision here considered where no interest of the public is involved.
A further indication of the intent of the Legislature may be found in the statute itself. The liability from which the contractor is prevented from absolving himself is from “ negligence * * * as a result of work performed or services rendered ”. (General Obligations Law, § 5-323.) It is basic that, when work is performed it normally carries with it an implied warranty that it was done in accordance with certain minimum standards. Thus, when equipment is serviced in a manner not in accordance with minimum standards and, as a result, later malfunctions causing damage to person or property, the negligent service contractor may be held résponsible for the damages. In 1953 when the statute was enacted, it seems, that it was becoming a practice among service contractors to include in their standard service contracts, a provision negating the warranty, Clearly the words chosen by the Legislature indicate the intention of prohibiting this practice by rendering such provisions void and unenforceable, in certain specific areas in or on which the public was necessarily invited.
Having ascertained the intention of the Legislature, the statute’s reference to construction (“ work performed or services rendered in connection with the construction * * * of real property or its appurtenances ”) is hereby construed to be limited to such construction which is incidental to the installation or servicing of appliances or equipment.
It may also be noted that, while the language of the statute is broad with respect to the liability from which the contractor may not be exempted, the wording of the waiver provision is strictly limited in this respect. Only liability for loss by fire and extended coverage hazards is included since these were the only risks provided in the contract to be covered by the insurance. Further limiting the scope of the waiver is the fact that, in the event that the required insurance was not provided, nothing was waived. The General Obligations Law’s prohibition of broad, omnibus *972 waivers of all liability in certain areas where substantial public interest exists, is not construed by this court to bar a limited, conditional waiver as we have here, entered into among a few entrepreneurs, motivated by the expectation of profit, where the enterprise itself has not yet been completed and prepared to serve the public.
Finally, the court finds abhorrent the situation in which a party proffers a contract containing a provision, clear and unequivocal on its face, and later, having brought action seeking affirmative relief, argues that the provision is void and unenforceable.
The court is, of course, aware that the Supreme Court, Oneida County, ruled a similar provision in a similar contract to be forbidden as contrary to public policy under section 5-323 of the General Obligations Law in Board of Educ., Utica School Dist. No. 1 v. Delle Cese (65 Misc 2d 473). We respectfully disagree with this conclusion which in our opinion erroneously applied the statute to the field of original building construction.
In view of the above, the court finds that the provisions of section 5-232 of the General Obligations Law do not apply to the contract here considered, and that the contract’s waiver provision is valid and constitutes an estoppel to the bringing of this action. The defendants, Vincent E. Iorio, Inc., J & L Concrete Construction Corp. and Carbide Reduction, Inc. (sued herein as Evans Air Products, Inc.) shall have summary judgment dismissing the plaintiff’s complaint.
In view of the decision herein, the court finds it unnecessary to decide the motions for summary judgment made by the moving defendants on a second ground.