[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CT Page 9057 DEFENDANT AMERICAN STANDARD COMPANIES, INC.'S MOTION FOR SUMMARY JUDGMENT #124
The plaintiff Best friends Pet Care, Inc. (Best Friends) is the owner of a chain of pet care facilities. Defendant American Standard Companies, Inc., by its division The Trane Company (Trane), entered into a contract with Best Friends to perform certain work relating to the installation of a heating and cooling system at its Rocky Hill, Connecticut, facility. On January 12, 1998, that facility was consumed by a fire during its construction. Best Friends alleges that the fire was caused by the negligence of Trane relating to a boiler installed at the facility. The entire loss of over $1 million, less a $5,000 deductible, was covered by an insurance policy which Best Friends purchased through The Hartford Insurance Company (The Hartford).
The contract between Best Friends and Trane, agreed to on September 5, 1997, is a form AIA (American Institute of Architects) agreement between the owner and contractor. The contract's general conditions section requires in Article 11 (Insurance and Bonds), subsection 11.3 (Property Insurance) that the owner shall maintain property insurance on the project or notify the contractor who will retain such property insurance to protect the interests of the contractor, subcontractors and subsubcontractors in the work. The contract further provides in Article 11.3.7 (Waivers of Subrogation) that:
 The owner and contractor waive all rights against each other and against the construction manager, architect, owners, other contractors and own forces described in Article 6, if any, and the subcontractors, subsubcontractors, consultants, agents and employees of any of them for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this paragraph.
The Rocky Hill facility was destroyed by fire and this case is being pursued by The Hartford as subrogee of its insured, Best Friends. Trane has filed a motion for summary judgment on the basis that Best Friends agreed to waive all rights against Trane for damages caused by fire, among other perils, and therefore cannot recover damages arising from fire as sought in the complaint. Best Friends has opposed the motion for summary judgment.
"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof CT Page 9058 submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A material fact is a fact that will make a difference in the result of the case. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . (Citation omitted; internal quotation marks omitted.) DaCruzv. State Farm Fire Casualty Co., 69 Conn. App. 507, 511, ___ A.2d ___ (2002). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . ." (Citation omitted.) Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
In opposition to the motion for summary judgment, Best Friends makes three inclusive arguments as to why the waiver of subrogation clause should not apply. First, Best Friends argues that its complaint is based on an earlier "National Accounts Business Plan" signed on July 7, 1997, rather than on the September 5, 1997, contract for the construction of the Rocky Hill facility. The July, 1997, agreement does not contain a waiver of subrogation clause, and it relates to the construction of a number of facilities based on a prototype throughout the northeast. The "National Accounts Business Plan," to the extent that it is a contract, is in any event covered by the integration clause contained in the September 5, 1997, agreement at Article 1.1.2, providing: "The contract represents the entire and integrated agreement between the parties hereto and supercedes prior negotiations, representations or agreements, either written or oral."
Best Friends next asserts that certain damages claimed in its complaint are beyond the scope of the September 5, 1997 contract. The complaint against Trane (Complaint, Third Count, paragraph 9e) alleges that Trane failed to properly supervise the installation of the boiler and heating system. Such an allegation encompasses work included within the scope of the September 5, 1997, construction agreement, because section 3.3.1 of that contract requires Trane to supervise and direct the work at the installation site. As previously discussed, the September 5, 1997, contract also contains the integration clause incorporating any earlier agreement, and includes the subrogation waiver. It is the operative contract and it superceded the July, 1997, business plan for purposes of this litigation relating to loss of property by fire.
In its third argument opposing Trane's motion for summary judgment, CT Page 9059 Best friends asserts that the waiver of subrogation clause is an exculpatory clause in a construction-related contract and therefore unenforceable pursuant to General Statutes § 52-572k.
There is no Connecticut case directly on point as to the application of General Statutes § 52-572k to a waiver of subrogation clause. Authority from other jurisdictions unanimously is of the view that a waiver of the subrogation clause is not an exculpatory provision.Chadwick v. CSI, LTD., 629 A.2d 820, 825-26 (N.H. 1993); Ralph KorteConstruction Co. v. Springfield Mechanicals Co., 369 N.E.2d 561, 562
(Ill.App.Ct. 1977); St. Vincent's Medical Center v. Vincent E. Iorio,Inc., 358 N.Y.S.2d 993 (N.Y.Sup.Ct. 1974); Intergovernmental RiskManagement v. O'Donnell, Wicklund, Pigozzi and Peterson Architects, Inc.,692 N.E.2d 739, 744 (Ill.App.Ct. 1998); Viacom Int'l, Inc. v. MidtownRealty Co., 602 N.Y.S.2d 326, 331 (N.Y.App.Div. 1993); and Behr v.Hook, 787 A.2d 499, 503 (Vt. 2001). These cases generally hold that the interest addressed by the prohibition against exculpatory clauses in construction contracts is aimed at protecting non-contracting third parties, such as the workers and the public, from a contractor's negligence. That interest is not adversely impacted by a waiver of subrogation clause absolving contracting parties from liability to each other for property loss or damage, where insurance covers the loss. The subrogation waiver is not an exculpatory clause prohibited by General Statutes § 52-572k; it represents an informed and negotiated business decision serving to get the project completed without need for protracted litigation over insurable losses.
The motion for summary judgment (#124) is granted.
ROBERT F. McWEENY, J.